IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIAS DIAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 14-cv-8042 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| KIMBERLY BUTLER, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Acting pro se, Elias Diaz ("Petitioner") filed a 28 U.S.C. § 2254 petition for writ of habeas corpus. [31]. For the reasons explained below, the Court denies the petition and declines to issue a certificate of appealability. A final judgment shall enter under Federal Rule of Civil Procedure 58. Civil case terminated.

**I.    Background**

**A.    State Trial Court Proceedings**

In 2009, an Illinois state court sentenced Petitioner to sixty years' imprisonment for first degree murder based on events that occurred 13 years earlier. In the early morning on November 10, 1995, six-year-old Nico Contreras was shot and killed while sleeping at his grandparents' house in Aurora, Illinois. [13-10, at 1]. Contreras was in a room previously occupied by Robert Saltijeral, a member of the Latin Homeboys street gang. [*Id*.]. The crime went unsolved until 2006, when Alejandro Solis was arrested on unrelated matters and informed Aurora police that he had information on the 1996 shooting. [*Id.*]. Solis became a paid informant and began recording conversations, including with Petitioner. [*Id.*].

On December 13, 2006, a warrant was issued for Petitioner's arrest, and Petitioner was placed in custody the next day. [*Id.*]. The matter was continued for a preliminary hearing on January 26, 2007. [*Id.*]. But on January 19, 2007, a grand jury indicted Petitioner and no preliminary hearing was held. [*Id.*]. The indictment charged Petitioner with two counts of first-degree murder. [14-1, at 2–3]. Relevant to Petitioner's habeas claims, the first count stated that Petitioner "without lawful justification and with the intent to kill Robert Saltijeral, shot Nicholas Contreras with a handgun, thereby causing the death of Nicholas Contreras." [*Id.*, at 2]. Also relevant to his claims here, Petitioner "moved for disclosure of the identities of confidential informants" prior to trial. [13-4, at 4]. The trial court denied these motions because the confidential informants did not witness or participate in the crime. [*Id.*].

At a bench trial, Solis testified that he was the leader of the Ambrose street gang in 1996 and that Petitioner was the second-in-command. [13-10, at 1]. Solis further testified that Petitioner told him that he drove two other members of the gang, Mark Anthony Downs and Ruben Davila, to the Contreras house so that Davila and Downs could kill Saltijeral. [*Id.*, at 2]. Davila also testified at the trial, explaining that Petitioner drove him and Downs to the house and that Petitioner ordered him to kill Saltijeral in retaliation for an earlier shooting. [*Id.*]. Davila explained that he and Downs exited the car and began arguing outside of the house because Davila did not want to shoot at the house. He claimed that Downs took a gun from him and shot at the house. [14-7, at 82–87]. A third member of the Ambrose street gang, Billie Mireles, also testified. [13-10, at 2]. She said that she was at a party a few days after the murder where Petitioner was beaten, apparently for his involvement with the murder. [*Id.*]. While she was stitching Petitioner's wounds, Petitioner repeatedly stated that he was only the driver. [*Id.*]. Defendant testified on his own behalf, indicating that he was asleep at his parents' home at the time of the murder. [*Id.*, at 3]. The trial

court then found Petitioner guilty of two counts of first-degree murder. [*Id.*]. After Petitioner's trial, the State tried Downs.

### B.    Direct Appeal

Petitioner appealed from the verdict. [13-4]. Relevant here, he argued that the trial court erred in failing to disclose the identity of two confidential informants. [13-1, at 43–49]. In 1997, the first informant told police that his brother told him that Davila committed the murder by himself that that Davila ran to his girlfriend's house after shooting at the house. [13-4, at 18]. About three years after the shooting, the second informant told police that Davila shot Contreras after "being sent to conduct a 'hit' on a rival gang member." [13-1, at 43]. The informant did not tell police that Petitioner was involved in the shooting. [*Id.*, at 43–44].

The Appellate Court recognized that the identity of confidential informants can relate to "a defendant's right to prepare a defense." [13-4, at 19] (citing *Roviaro v. United States*, 353 U.S. 53, 62 (1957) (explaining decision to reveal identity of confidential informant requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense")). Relying on Illinois law, the Appellate Court rejected Petitioner's argument that he needed the identity of the informants in this case, reasoning that neither informant was "a crucial witness" because "neither participated in nor witnessed the offense." [*Id.*] (citing *People v. Rose*, 794 N.E.2d 1004, 1006 (Ill. App. 2003)). Petitioner filed a petition for leave to appeal to the Illinois Supreme Court [13-5], which was denied [13-6].

### C.    Collateral Review Proceedings

Between 2011 and 2015, Petitioner collaterally attacked his conviction in Illinois courts by filing a petition for relief from judgment, a postconviction petition, and three successive postconviction petitions. In May 2011, he filed through counsel a petition for postconviction relief

under 725 Ill. Comp. Stat. 5/122-2.1 ("2011 petition"). Relevant here, he argued that (1) the trial court convicted him without sufficient evidence; (2) his appellate counsel provided ineffective assistance of counsel ("IAC") by failing to challenge the sufficiency of the evidence on direct appeal, [78-1, at 2], and (3) his sentence was void because the indictment did not allege that he was guilty of first degree murder based on an accountability theory, [13-10, at 5]. In October 2011, he filed a *pro se* petition for void judgment relief under 735 Ill. Comp. Stat. 5/2-1401(f) ("section 2-1401 petition"). He argued that his conviction was void because (1) 725 Ill. Comp. Stat. 5/109-3.1, which governs preliminary hearings, violated the Illinois Constitution, [78-2, at 20–26]; and (2) his trial counsel was ineffective by failing to challenge the constitutionality of section 109-3.1 [*id.*, at 35–37]. The trial court dismissed both the 2011 postconviction petition and the section 2-1401 petition. Petitioner, acting *pro se*, appealed both decisions and his appeals were consolidated. [13-10, at 1].

Regarding the 2011 petition, the Appellate Court declined to reach the merits of Petitioner's claims that the trial court convicted him without sufficient evidence and that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. [13-10, at 4]. It explained that Petitioner's claim consisted of a "word for word" copy of the background section of the direct-appeal decision, followed by the "conclusory assert[ion] that 'this is not evidence of guilt beyond a reasonable doubt'" and "boilerplate law regarding the burden of proof at a criminal trial." [*Id.*]. Relying on Illinois Supreme Court Rule 341(h)(7), the Appellate Court determined that Petitioner forfeited these arguments by failing to "articulate a coherent argument supported by citations to the record." [*Id.*]. The Appellate Court also determined that the alleged inadequacy of the indictment did not provide a basis to void his sentence. [*Id.*, at 5].

On his section 2-1401 petition, the Appellate Court reasoned that even if section 109-3.1 violated the Illinois Constitution, such violation "would not render his conviction and sentence void." [*Id.*, at 6]. And it explained that 2-1401 petitions "are not an appropriate forum for ineffective-assistance claims because such claims do not challenge the factual basis for the judgment." [*Id.*] (quoting *People v. Pinkonsly*, 802 N.E.2d at 236, 244 (Ill. 2003)). It thus affirmed the trial court.

In June 2012, Petitioner filed through counsel Stephen Richards a first successive postconviction petition based on a claim of actual innocence ("2012 petition"). [78-3]. He included an affidavit from Downs stating that about a day after the murder, Davila told him that he committed the murder alone and that Davila never mentioned Petitioner when discussing the murder. [78-3, at 15–16]. The trial court explained that in Illinois, to be eligible to file a successive postconviction petition, the petition must show both cause as to why the claim was not raised in the initial postconviction petition and that the claim prejudiced him in such a manner as to violate due process. [*Id.*, at 22]; see also 725 Ill. Comp. Stat. Ann. 5/122-1. Implying that Petitioner did not meet this standard, the trial court explained that successive postconviction petitions are also permitted if the petitioner makes a claim of actual innocence based on newly discovered, material, and conclusive evidence. [78-3, at 22–23]. The trial court determined that Davila's statements to Downs were hearsay and that, under Illinois law, hearsay is "insufficient to warrant post-conviction relief based on a claim of actual innocence." [*Id.*, at 23]. Petitioner filed a notice of appeal himself, but listed Stephen Richards as his attorney. [*Id.*, at 41]. After granting several extensions, the Appellate Court dismissed the appeal because Petitioner failed to file the record on appeal and brief. [*Id.*, at 44–45]. In 2017, the appeal was reinstated and denied. [78-10, at 51]. The Appellate Court explained that even if the Downs affidavit was admissible, it did not set forth

a colorable claim of actual innocence because it was "not 'of such conclusive character that it would probably change the result on retrial,'" as required by Illinois law. [*Id.*, at 57] (quoting *People v. Morgan*, 817 N.E.2d 524, 527 (Ill. 2004).

In February 2015, Petitioner moved for leave to file a second successive postconviction petition ("February 2015 petition"), raising five claims relevant here. [78-4]. He based much of his argument on information he learned from Downs' trial, which occurred after Petitioner's own trial. First, Petitioner claimed that the State allowed Solis to falsely testify. [*Id.*, at 11]. He alleges that the F.B.I. paid $5,000 in back child support so that Solis could be released from jail and begin working as an informant on this case. [*Id.*]. He asserts that the State misled the trial court about this fact and that the payment unduly influenced Solis and caused his to testify falsely. [*Id.*, at 11–19]. Second, he claimed that the State committed a *Brady* violation by failing to disclose the $5,000 payment to defense counsel. [*Id.*, at 19–21]; see also *Brady v. Maryland*, 373 U.S. 83 (1963). Third, he claimed that new evidence—testimony from Angelica Gonzalez and Deborah Davila at Downs' trial—demonstrated that Petitioner was actually innocent. [*Id.*, at 21–28]. Fourth, he claimed that his trial counsel provided ineffective assistance of counsel for failing to investigate and produce testimony that could have been used to rebut and impeach Davila's and Solis's testimony. [*Id.*, at 28–34]. Specifically, he argues that if his counsel had been aware of the $5,000 payment, then his counsel was ineffective to not elicit related testimony at trial. [*Id.*, at 31–32]. He also argued that his counsel was ineffective for failing to investigate Angelica Gonzalez and Deborah Davila as potential witnesses, as their testimony would have contradicted David Davila's. [*Id.*, at 32–35]. Fifth, he argues that his postconviction counsel provided ineffective assistance of counsel on both his 2011 and 2012 postconviction petitions. [78-4, at 34–37].

6

The trial court concluded that (1) Petitioner did not demonstrate cause and prejudice and (2) Gonzalez's and Deborah Davila's testimony did not demonstrate Petitioner's actual innocence. [78-4, at 108–110]. Accordingly, it denied Petitioner's motion for leave to file the February 2015 petition. [*Id.*].

In July 2015, Petitioner moved for leave to file a third successive postconviction motion ("July 2015 petition"), arguing that he was actually innocent based on an affidavit from Jose Salinas and that his trial counsel was infective by failing to investigate and discover this evidence. [78-5, at 19–20]. In the affidavit, Salinas averred that Davila told him that Solis ordered him to shoot Saltijeral. [*Id.*, at 54]. The trial court denied Petitioner leave to file his February 2015 petition because the Salinas affidavit was not new evidence that demonstrated his actual innocence and that any decision about whether to call Salinas at trial was part of Petitioner's trial counsel's trial strategy. [*Id.*, at 69].

Petitioner appealed from the orders denying him leave to file his February and July 2015 petitions. The Appellate Court consolidated the appeals and affirmed both orders. [78-15]. Relevant here, the Appellate Court first addressed Petitioner's claim that his postconviction counsel provided ineffective assistance. It explained the Illinois postconviction process "provides relief in situations where there was a substantial denial of the petitioner's constitutional rights 'in the proceedings which resulted in his or her conviction.'" [*Id.*, at 4] (quoting 725 Ill. Comp. Stat. 5/122-1(a)(1)). Therefore, it continued, "a petitioner's claim of ineffective assistance of postconviction counsel at a prior post-conviction proceeding does not present a basis upon which relief may be granted under the Act." [*Id.*] (quoting *People v. Flores*, 606 N.E.2d 1078, 1084 (Ill. 1992)). Next, the Appellate Court addressed Petitioner's claim that his trial counsel was ineffective by not investigating Salinas and calling him as a witness. It found that Defendant

presented cause for not having raised this claim earlier, but that Defendant did not demonstrate prejudice because his trial counsel's performance did not meet *Strickland*'s prejudice standard. [*Id.*, at 5–6].  The Illinois Supreme Court then denied Petitioner's petition for leave to appeal.  [78–17].

## II.    Legal Standard

### A.    28 U.S.C. § 2254 Standard

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  § 2254(a).  Thus, habeas petitions must challenge a petitioner's custody, *id.*, and habeas relief is not available to remedy errors of state law, *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Further, the Court may provide habeas relief only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d).  For a decision to be contrary to clearly established law, the decision must be "opposite to that reached by [the Supreme] Court on a question of law" or different from a Supreme Court decision with "materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

B.      **Procedural Default**

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotations marks and citation omitted).  In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition.  See *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).  To fairly present a claim, a petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and a petitioner also must alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001).  "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).  A claim also is procedurally defaulted "[w]hen a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010).  "Thus, when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules * * *, that decision rests on independent and adequate state procedural grounds." *Id*.

"A federal court on collateral review will not entertain a procedurally defaulted constitutional claim unless the petitioner can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice." *Id*.  "In order to demonstrate cause for failure to exhaust, [a petitioner] must demonstrate that 'some

objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule.'" *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (internal quotations omitted). "The habeas petitioner must show 'not merely that the errors at * * * trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (alteration in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 496.

## III.    Analysis

Petitioner makes thirteen claims. As explained below, none of the claims entitles him to habeas relief.

### A.    Constitutionality of 725 Ill. Comp. Stat. 5/109-3.1 and Related IAC Claim (Claims 1 and 2)

Petitioner first argues that he is entitled to habeas relief because 725 Ill. Comp. Stat. 5/109-3.1 violates the Illinois and United States Constitutions. [31, at 6–10]. This statute provides that "[e]very person in custody in this State for the alleged commission of a felony shall receive either a preliminary examination as provided in Section 109-3 or an indictment by Grand Jury as provided in Section 111-2, within 30 days from the date he or she was taken into custody." 725 Ill. Comp. Stat. Ann. 5/109-3.1. Here, Petitioner was placed in custody on December 14, 2006, and indicted by a Grand Jury on January 19, 2007. [13-10, at 1].

Petitioner first argues that the section 109-3.1 violates the Illinois Constitution. But habeas relief "is unavailable to remedy errors of state law." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). Therefore, Petitioner is not entitled to relief based on this argument. Petitioner next suggests that the statute violates the United States Constitution because it permits individuals to

be held in custody for up to thirty days without a probable cause determination. [31, at 8] (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)). But a habeas petition must challenge the petitioner's custody, and therefore "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119; see also § 2254(a). Accordingly, Petitioner's first claim fails.

In his second claim, Petitioner next asserts that his trial counsel was ineffective for failing to challenge the constitutionality of section 109-3.1. [31, at 10–13]. Respondent argues that this claim is procedurally defaulted because the state court found that Petitioner did not raise it using the proper vehicle and that this "state law ground* * * is both independent of the federal question and adequate to support the judgment." *Kaczmarek*, 627 F.3d at 591; see also [79, at 12]. The Court agrees with Respondent. Petitioner initially raised this IAC claim in a 2-1401 petition. [78-2, at 35–37]. As the Illinois Appellate Court has explained, a 2-1401 petition must raise factual issues and "requires the court to determine whether facts exist that were unknown to the court at the time of trial and would have prevented entry of the judgment." *Pinkonsly*, 802 N.E.2d at 243. Thus, petitioners cannot typically bring IAC claims in 2-1401 petitions. In arguing otherwise, Petitioner relies on *People v. Lawton*, 818 N.E.2d 326 (Ill. 2004). [22, at 6]. There, the court permitted the petitioner to bring an IAC claim in a 2-1401 petition. *Id.* at 335. But the petitioner in *Lawton* was civilly committed, and the court was careful to explain that its holding did not extend to criminal defendants because those defendants could bring IAC claims through the state's "Post-Conviction Hearing Act." *Id.* at 334. Because the state court rejected Petitioner's claim on independent and adequate state grounds, it is procedurally defaulted. See *Woods*, 589 F.3d at 373 ("[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate

11

state ground for denying federal review."). Petitioner does not argue that he can establish cause and prejudice to excuse this default. [31, at 10–12].

### B.     Insufficiency of the Evidence and Related IAC Claim (Claims 3 and 5)

In his fifth claim, Petitioner argued that the state trial court convicted him with insufficient evidence. [31, at 25]. In his third claim, Petitioner argues that his direct-appeal counsel was ineffective for not raising an insufficiency-of-the-evidence claim. [*Id.*, at 14]. Petitioner first raised these claims in his May 2011 petition for postconviction relief. [13-10, at 4]. The court did not reach the merits and instead found that Petitioner forfeited these arguments by failing to "articulate a coherent argument supported by citations to the record." [*Id.*]. Because the state court disposed of Petitioner's claim on independent and adequate state grounds, the claim is procedurally defaulted and cannot serve as the basis for habeas relief. See *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground."). Petitioner does not attempt to show cause and prejudice and instead argues that the Court can reach the merits of these claims because the state court addressed the claim on the merits. [22, at 7–8]. But the state court addressed the merits as an alternative holding [13-10, at 4], and if a state court reaches the merits in an alternative holding, "then the independent and adequate state ground doctrine 'curtails reconsideration of the federal issue on federal habeas.'" *Moore v. Bryant*, 295 F.3d 771, 775 (7th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)).

### C.     Actual Innocence Based on Downs' Petition and Related Postconviction Counsel IAC Claim (Claims 4 and 12)

In his fourth claim, Petitioner argues that the state court erred in finding that his 2012 petition did not raise an actual innocence claim. [31, at 14]. In his twelfth claim, Petitioner argues

that his postconviction counsel provided ineffective assistance regarding his second petition for postconviction relief.[1]  [31, at 63–65].

Petitioner's 2012 petition argued that he was actually innocent based on an affidavit from Downs in which Downs states that Davila told him that Davila acted alone in the murder.  [78-3].  The trial court found that Davila's statements were hearsay and therefore could not support an actual innocence petition under Illinois law.  [*Id.*, at 23].  And the Appellate Court reasoned that even if the affidavit was not hearsay, it was not "of such conclusive character that it would probably change the result on retrial."  [78-10, at 57] (quoting *Morgan*, 817 N.E.2d at 527).  In challenging the state court decision here, Petitioner primarily attacks the trial court's ruling and argues that it erred in finding that Davila's statement did not meet the statement-against-penal-interest exception to the hearsay rule.[2]  [31, at 19–23].

But Petitioner's arguments amount to challenges of the state court's process for resolving state law issues, and habeas relief "is unavailable to remedy errors of state law."  *Dellinger*, 301 F.3d at 764.  This is true even though Plaintiff attempts to frame this claim as a federal one by stating that the "review was fundamentally unfair and resulted in a denial of due process" under the Fourteenth Amendment.  [31, at 23].  Petitioner cannot "transform a state-law issue" regarding alleged errors in his postconviction proceedings "into a federal one merely by asserting a violation of due process."  *Mishler v. Superintendent*, 2016 WL 1658672, at *5 (N.D. Ind. Apr. 26, 2016);

---

[1] Petitioner also argues that his postconviction counsel failed to comply with an Illinois Supreme Court rule.  [31, at 63–65].  Because this is a state law claim, it cannot serve as the basis for habeas relief.  See *Dellinger*, 301 F.3d at 764.

[2] In his reply, Petitioner argues that the state judge reviewing his second petition for postconviction relief should have recused himself because that same judge convicted him after a bench trial.  [86, at 5].  However, in Illinois, "the same judge who presided over the defendant's trial should hear his postconviction petition, unless it is shown that the defendant would be substantially prejudiced."  *People v. Hall*, 626 N.E.2d 131, 133 (Ill. 1993).

see also *Jones v. Butler*, 778 F.3d 575, 586 (7th Cir. 2015) (holding that state court's denial of postconviction evidentiary hearing, which petitioner claimed "was a violation of his due process rights," was simply a challenge to state postconviction procedures and not cognizable). Accordingly, Petitioner's fourth claim cannot serve as the basis for habeas relief. *Dellinger*, 301 F.3d at 764.

In his twelfth claim, Petitioner argues that his postconviction counsel was ineffective in raising his claim of actual innocence based on Downs' affidavit. Specifically, he argues that his postconviction counsel provided ineffective assistance by failing to interview or investigate Deborah Davila and Angelica Gonzalez because their testimony would have supported the Downs affidavit that served as a basis of his actual innocence claim. [*Id.*, at 63–65]. However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254. Thus, this claim also fails.

### D. Adequacy of the Indictment (Claims 6 and 7)

Petitioner makes two claims related to the adequacy of his indictment. To "comport with due process," indictments "must notify the criminal defendant of the specific charge against him so that he may defend against that charge." *Tague v. Richards*, 3 F.3d 1133, 1141 (7th Cir. 1993).

In his sixth claim, Petitioner argues that his sentence is void because he was found guilty under an accountability theory and this theory was not pled in the criminal indictment. [31, at 3132]. And in his seventh claim, Petitioner argues that his sentence is void because the indictment did not include the mental-state element of the offense. [31, at 33–34]. In his reply, Petitioner frames these claims as a violation of his constitutional right to be informed of the nature and cause of the accusations against him. [86, at 7]. The state court rejected the state-law aspect of

Petitioner's claims [13-10, at 5], and it appears that Petitioner failed to exhaust the federal aspect of his sixth claim. See [13-7, 56–57]; [13-10, at 5]. But the Court may reach the merits of even unexhausted claims "where the petitioner does not raise even a colorable federal claim." *Jones*, 64 F.3d at *1. Here, the Seventh Circuit has squarely rejected Petitioner's argument such that his sixth claim is not colorable. The Seventh Circuit explained that, "[u]nder well-established Illinois law, 'a person charged as a principal can be convicted upon evidence showing that he was in fact only an aider or abetter.' That is 'because accountability is not a separate offense but merely an alternative manner of proving a defendant guilty of the substantive offense.'" *Ashburn v. Korte*, 761 F.3d 741, 758 (7th Cir. 2014) (quoting *People v. Doss*, 426 N.E.2d 324, 327 (Ill. 1981)). The *Ashburn* court then concluded that a petitioner charged with shooting and stabbing the victim was therefore "on notice that he could be convicted of murder either as a principal or based on an accountability theory and his due process rights were not violated." *Id.* Likewise, Petitioner's due process rights were not violated by the indictment, and he is not entitled to habeas relief on his sixth claim.

In his seventh claim, Petitioner contends that the indictment was inadequate because it did not include "the intent to do great bodily harm" and that an "allegation of intention to kill or do great bodily harm" is required in indictments of first-degree murder. [31, at 33–34]. But the indictment alleged that Petitioner had "the intent to kill," and Petitioner's argument therefore fails. [14-1, 2].

### E. Disclosure of Confidential Informants (Claim 8)

In his eighth claim, Petitioner contends that the state court improperly denied his motions for disclosure of the identity of two confidential informants. [31, at 35–40]. In his reply brief, Petitioner argues that the failure to disclose the identity of the informants constituted a *Brady*

violation because the informants' statements would have impeached the State's key witnesses. [86, at 13]; see also *Brady*, 373 U.S. at 83. In his state proceedings, Petitioner argued to both the trial court and the Appellate Court on direct appeal that the State should have disclosed the identity of the confidential informants. [13-4, at 3, 18]. Both courts rejected the argument because the informants neither witnessed nor participated in the crime. [*Id.*]. Respondent argues that Petitioner is not entitled to habeas relief because the state court's resolution of this claim is not contrary to clearly established federal law. [79, at 17].

Under the "the Compulsory Process Clause, which provides that the accused shall have the right 'to have compulsory process for obtaining witnesses in his favor,' [and] the Due Process Clause of the Fourteenth Amendment," a defendant has "a substantive right to present a meaningful and complete criminal defense." *Harris v. Thompson*, 698 F.3d 609, 626 (7th Cir. 2012). That said, a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). And under *Brady v. Maryland*, the government has a duty to disclose "evidence favorable to" a defendant. *Brady*, 373 U.S. at 87. "[A] *Brady* violation only occurs if 'material' evidence is withheld, that is 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Stott*, 245 F.3d 890, 901 (7th Cir. 2001) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). This "materiality requirement" also applies to "the Compulsory Process Clause analysis." *Harris*, 698 F.3d at 227. Therefore, in order for the state proceedings here to be "contrary to clearly established Federal law," § 2254(d), there must have been a "reasonable probability that, had" the identity of the confidential informants been disclosed to Petitioner, "the

result of the proceeding would have been different," *Stott*, 245 F.3d at 901 (quoting *Bagley*, 473 U.S. at 682).

Petitioner argues that the prosecution should have disclosed the identity of two confidential informants. [31, at 35–36]. According to Petitioner, the first informant told police shortly after the murder that the informant's brother told him that Davila committed the murder alone and ran to his girlfriend's house afterward. [31, at 35]. Petitioner argues that this testimony undermines Davila's testimony that Petitioner drove him to and from the shooting, and that Petitioner could have used the confidential informant's testimony to impeach Davila. [*Id.*]; [86, at 13]. But even if Petitioner could have used this testimony to impeach Davila, he has not demonstrated that such impeachment would have changed the result of the proceedings. See *Stott*, 245 F.3d at 901. This is particularly true given Mireles' testimony that Petitioner told her that he was the driver. [13-10, at 2]. Therefore, the state court's rulings against Petitioner on this aspect of his claim did not violate the Constitution or clearly established federal law.

The second confidential informant told police that he learned at an Ambrose street gang meeting that Davila shot Contreras "after being sent to conduct a hit on a rival gang member." [31, at 35]. Petitioner argues that he should have been informed of the identity of this confidential informant for two reasons. First, Petitioner explains that this testimony could have been used to impeach Davila, who testified that Downs shot Contreras. [*Id.*, at 39]; [13-4, at 4]. Second, he argues that the confidential informant attended a gang meeting where the murder was discussed, and he argues that knowing the identity of the confidential informant could have helped him investigate the case. [31, at 35, 39]; [86, at 13–14]. His impeachment argument fails for the same reason that the prior one does: Petitioner has not demonstrated that "the result of the proceeding would have been different" had he been able to impeach Davila using this testimony. *Stott*, 245

F.3d at 901 (quoting *Bagley*, 473 U.S. at 682). On his second argument, Petitioner has not rebutted the state court's factual finding that he was the gang's second-in-command at the time of the shooting. [13-4, at 4]. Given his position in the gang, the Court is not convinced that Petitioner's alleged inability to investigate what was discussed at gang meetings was prejudicial to his case. Because Petitioner has not demonstrated that he was prejudiced by the trial court's decision to withhold the identity of confidential informants, Petitioner has not demonstrated that the state court's decision was contrary to clearly established federal law, and he is therefore not entitled to habeas relief on this claim. § 2254(d)

### F. False Testimony and Related IAC Claim (Claims 9 and 10)

Petitioner's next two claims arise out of information he learned from Downs' 2009 trial. Petitioner claims that from Downs' trial, he learned that in 2006, the F.B.I. paid $5,000 in child support that Solis owed so that Solis could be released from jail and begin working as an informant. [31, at 41]. He also claims he learned that Solis had a two-and-a-half-year prison sentence vacated in exchange for cooperation. [*Id.*, at 43]. Petitioner explains that neither he nor the trial court was ever made aware of these facts,[3] and he argues that the State "allowed the court to be misled regarding the benefits [Solis] received." [*Id.*, at 41]. Petitioner claims that he was denied his Fourteenth Amendment right to due process because (1) the State "should have reasonably known that it allowed [a] witness to testify falsely at trial" (claim nine), [31, at 41]; and (2) "the State failed to disclose material evidence" regarding the benefits Solis received "to the defense" (claim ten), [*Id.*, at 50].

---

[3] However, later in his petition, he states that he is unsure of whether his defense counsel knew about the $5,000 payment and explains that because his counsel did not bring up the payment at trial, he assumes that she was unaware of the payment. [31, at 41].

Respondent first raised these claims in his February 2015 petition. [78-4, at 11–21]. As explained above, the state court denied his motion for leave to file this successive petition because he did not meet Illinois's requirement of demonstrating cause and prejudice or actual innocence. [78-4, at 108]. Because the state court based its decision on the Illinois law regarding successive postconviction petitions, 725 Ill. Comp. Stat. Ann. 5/122-1, these claims were denied on independent and adequate state law grounds and are now procedurally defaulted. See *Woods*, 589 F.3d at 373. Petitioner argues that he can overcome this default by demonstrating cause and prejudice. [31, at 43]. Specifically, he asserts that the procedural default should be excused because he did not learn of the evidence until after Downs' 2009 trial, [*id.*, at 43], and because his postconviction counsel was ineffective in failing to raise these claims, [86, at 16]. As to the timing, Downs' trial occurred in 2009 and Petitioner filed his first postconviction petition in 2011. Therefore, the timing does not explain why he failed to raise these claims earlier.

Next, in claiming ineffective assistance of postconviction counsel on this point, Petitioner merely asserts that "[t]hese claims are claims that should have been raised by postconviction counsel Steven Richards. But due to his unreasonable representation and abandonment he did not raise them." [86, at 16]. This conclusory assertion does not adequately argue that his postconviction counsel provided ineffective assistance of counsel.[4] See *Kirkpatrick v. Lambert*, 2013 WL 5477567 at *6 (N.D. Ill. Oct. 2, 2013) ("[P]etitioner's ineffective assistance arguments are literally one sentence long with no legal citation or explanation as to how *Strickland* applies to each, or any, of his arguments. Arguments raised in such a perfunctory manner are waived."). Moreover, even if Petitioner adequately developed his postconviction IAC argument, it would not excuse his procedural default because, in Illinois, claims that postconviction counsel was

---

[4] Although Petitioner's twelfth claim included a more thorough postconviction IAC claim, it was limited to his postconviction counsel's investigation and therefore does not apply here.

ineffective cannot serve as cause excusing the default of a claim that trial counsel was ineffective. See *Crutchfield v. Dennison*, 910 F.3d 968, 978 (7th Cir. 2018) (finding that "Illinois law gives prisoners a meaningful opportunity to litigate claims of ineffective assistance of trial counsel on direct review" such that the *Martinez-Trevino* exception to postconviction IAC claims does not apply).

### G.    Remaining Trial IAC Claims (Claims 11 and 13)

In his remaining two claims, Petitioner argues that his trial counsel was ineffective by (1) failing to investigate and present testimony by Deborah Davila and Angelica Gonzalez and testimony regarding the $5,000 child support payment made on behalf of Solis (claim 11), [31, at 52–62]; and (2) failing to investigate and present testimony by Jose Salinas (claim 13), [*id.*, at 70–71].  Petitioner first raised his eleventh claim his February 2015 petition.  The trial court explained that, as required by Illinois law, Petitioner failed show cause for why he did not raise these claims earlier and that the petition did not demonstrate actual innocence.  [74-8, at 108].  Accordingly, Petitioner procedurally defaulted his eleventh claim.[5]  In arguing that he can overcome this default, Petitioner first asserts that his trial counsel's ineffectiveness itself caused the default.  [31, at 58–62].  However, Petitioner defaulted these trial IAC claims by raising them for the first time in a successive postconviction petition.  See *Woods*, 589 F.3d at 373.  Any ineffectiveness of Petitioner's trial counsel in 2009 is unrelated to his ability to raise these trial IAC claims in his

---

[5] When reviewing Petitioner's appeal from his February 2015 petition, the Appellate Court did not discuss the claims Petitioner now raises in his eleventh claim.  [78-15, at 2] (explaining that the only issue in Petitioner's February 2015 petition "pertinent to th[e] appeal" was "his arguments with respect to" his postconviction counsel).  To the extent that the absence of discussion indicates that Petitioner failed to appeal the claims in his February 2015 petition that now form the basis of his eleventh claim, Petitioner procedurally defaulted his claims for this reason.  See *Gray v. Hardy*, 598 F.3d 324, 327 (7th Cir. 2010) (explaining that a federal habeas petitioner "must first exhaust his state remedies by fairly presenting his claims through one *full round* of state-court review" (emphasis added)).

initial postconviction petition in 2011. Next, Petitioner suggests that ineffectiveness of his postconviction counsel caused the default of these claims. [86, at 16]. As explained above, even if Petitioner adequately raised this argument, in Illinois, claims that postconviction counsel provided ineffective assistance cannot serve as cause for the default of a claim that trial counsel did. See *Crutchfield*, 910 F.3d at 978.

Petitioner first raised his thirteenth claim in his July 2015 petition. In this petition, he argues that his trial counsel was ineffective for failing to investigate Salinas and for failing to call him to testify. [78-5, at 19–20]. He attached an affidavit from Salinas in which Salinas avers that Davila told him he shot Contreras and that he was acting on Solis's orders. [*Id.*, at 54]. The state Appellate Court noted that Petitioner did not raise this claim in his first postconviction petition, but concluded that Petitioner "showed cause for failing to raise his claim in an earlier proceeding, given his contention of ineffective assistance of counsel and his allegation that Salinas relayed information to defendant's counsel which she did not in turn relate to defendant." [78-15, at 5]. However, the Illinois Appellate Court determined that he could not show prejudice because his trial counsel's performance was not prejudicial under *Strickland*. [*Id.*]; see also *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (explaining that to demonstrate that counsel provided ineffective assistance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Specifically, the Appellate Court noted that Salinas' 2015 affidavit indicated that he did not come forward earlier with the information "because he did not want to be a 'snitch,'" and it concluded that given this statement, there "is no reason to expect that he was willing to share that same information in open court at defendant's 2008 trial." [78-15, at 5]. The Appellate Court also explained that the contents of Salinas' affidavit would likely have been deemed inadmissible

21

hearsay and that, even if admitted, the contents do not demonstrate that "Davila meant to imply that [Petitioner] played *no part* in the Contreras shooting." [*Id.*, at 5–6].

Because the state court based its procedural ruling on the constitutional *Strickland* standard, it did not resolve the matter on an independent state law ground and therefore Petitioner's thirteenth claim is not procedurally defaulted. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) ("[W]hen resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded."). That said, that Court agrees with the state Appellate Court's assessment of the merits. In Salinas' 2015 affidavit, he explained that he "did not come forward with this [information] before because [he] didn't [want] to be a snitch." [78-5, at 54]. Even though Salinas averred that Petitioner's trial counsel met with him, it is unlikely that he would have been willing to testify at Petitioner's trial given this statement. Further, as the Appellate Court explained, Salinas' testimony as to what Davila said would likely have been inadmissible at trial. [78-15, at 6]. In any event, the Court certainly cannot say that the state Appellate Court's ruling on this claim "was contrary to, or involved an unreasonable application of" the *Strickland* standard "as determined by the Supreme Court of the United States" or that the ruling was "based on an unreasonable determination of the facts." § 2254(d). Accordingly, Petitioner is not entitled to habeas relief on his thirteenth claim.

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A habeas petitioner does not have an absolute right to appeal a district court's denial of his petition; instead, he must first request a certificate of appealability.

See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In cases where a district court denies some or all of the requested relief on procedural grounds, the court should issue a certificate of appealability as to those claims only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was right in its procedural ruling. See *Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.").

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his non-procedurally defaulted claims or that Court's determination that some of his claims are procedurally defaulted. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**V.     Conclusion**

For the reasons explained above, the Court denies Petitioner's § 2254 petition for writ of habeas corpus.  [31].  And because "reasonable jurists" could not debate this conclusion, the Court denies Petitioner's request for a certificate of appealability.  A final judgment shall enter under Federal Rule of Civil Procedure 58.  Civil case terminated.

Dated: January 4, 2021

Robert M. Dow, Jr.
United States District Judge